GREEN, J.
delivered the opinion of the court.
This bill is brought to set up a verbal mortgage, which it is al-ledged was made in 1829, of a negro boy, the property for life *463 or widowhood of the complainant. The bill states that the complainant was the owner of the negro boy, then six or seven years old; that he had been pledged to one Tidwell for the security of a small sum of money; that Currin the defendant (to whom she was indebted) obtained judgment against her for about thirty-five dollars, and had his execution levied on the boy; that on the day of sale he professed that he only wanted his money; that his only object was to secure his debt; and promised and agreed to bid off the boy for her, and that she should have him whenever she should pay him his money and interest. In consequence of this promise, she made no effort to raise the money, which she could easily have done by borrowing it from others; and Currin bid off the boy for his debt, no person bidding against him on account of the understanding that said Currin was bidding for her benefit.
The answer denies that the defendant purchased the negro under any contract or promise to hold him for the complainant; but admits that he would have been willing to take his money and interest for the interest he obtained in the boy by the purchase, and that he would have been willing to give him up on payment of the amount bid, and other debts due him and his partner, for two or three years after the sale; but denies that he ever came'under any legal obligation to do so.
The defendant relies on the statute of limitations.
James W. Loyd, a witness, proves -that he heard defendant, in conversation with complainant in 1832 and 1833, in which he said that it was ever his intention, before and after the sale of said boy, that upon his money and interest being paid, he would relinquish his title in the boy to the complainant. He also told witness in 1833 or 1834, when application was made to-know how much complainant owed him, that if his money was paid, the complainant should have the negro; but in 1835 when his money was offered to him, he refused to receive it, and surrender the negro, alledging that he had kept him so long, and running the risk of his dying, that he was not then willing to give him up.
Jacob Lampley states, that he was present at the sale, and that it was the “understanding” that the defendant was to pur *464 chase the boy for the complainant, and that this understanding injured the sale of the boy.
George Sullivan, was the officer that sold the boy, and from conversations both before and after the sale, he understood that complainant was to have the liberty of redeeming the boy afterwards.
Acquilla Tidwell was at the sale, and heard Currin say, about the time the boy was put on the block to be sold, that any time his debt interest and cost was paid, he was willing to give up the negro.
This was all the evidence, and the question is, whether the proof is sufficient to establish the existence of a contract of mortgage against a direct denial of the answer. If there was a contract, before the sale of the boy by the constable, whereby it was agreed that the defendant should acquire, by means of the sale, the legal title to the negro, to be held by him as a security for his money, such contract would be a mortgage, and the means by which the complainant’s title was conveyed, would make no difference. But if, on the other hand, there was no contract, and the defendant, either under the influence of a kind feeling towards the debtor, or with a fraudulent view of preventing others from bidding made statements of his willingness to receive his money and give up the negro at any time, such statements would not create a mortgage. A mortgage is a contract, by which one person conveys property to another as a security for a debt. The matter must be the subject of stipulation and agreement between the parties. Now was there such stipulation and agreement in the present case? We cannot infer from the testimony that there was. None of the witnesses heard the parties confer together and agree, that the defendant should get the title to the negro by the constable’s sale, and hold him as security for the money. He was frequently heard to say before the sale, that all he wanted was his money, and after the sale, he repeated on various occasions that he was willing to give the negro up, on the reception of the sum due him. And one of the witnesses says that it was his understanding, that the defendant was to purchase the boy for the complainant.
All this falls far short of establishing a contract of mortgage. *465 The whole evidence is perfectly consistent with the exercise of those kind feelings which most generous men have towards an embarrassed debtor. They want only their money; and if compelled to bid for property to save a debt, would most naturally say, they would give it up on the payment of the sum due. If this were said after the sale, it would create no right whatever in the debtor, and might be retracted at pleasure. But if it were said before the sale, and under circumstances to deter others from bidding whether the party had any fraudulent intent to produce that effect or not, he would in a court of equity be held as a trustee for the benefit of the debtor, or of other creditors. But, as against implied trusts of this description, it is the well settled doctrine, that the statute of limitations operates, as it does at law. The sale at which the defendant purchased the negro in question, was made in 1829, and this bill was not filed until 1839.
After such a lapse of time, the testimony must be exceedingly clear and satisfactory, before the court would be justified in setting up a parol defeasance to defeat an absolute conveyance, against the direct denial of the answer. More especially would this be required, where the title has been acquired through legal process.- But this case presents no express evidence of a bargain, nor is there any proof from which one can be inferred to have been made. We think therefore, that the statute of limitations is a bar to all the relief sought, and that the decree must be reversed, and the bill dismissed.